In re S.I., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.I., a Minor, Respondent-Appellant).

Fourth District   No. 4—92—0245

Opinion filed September 17, 1992.

708

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

On February 5, 1992, the State filed a supplemental delinquency petition charging respondent minor, S.I., with committing the offense of aggravated assault on February 4, 1992 (Ill. Rev. Stat. 1991, ch. 38, par. 12—2(a)(1)). The trial court conducted a detention hearing that same day and found that the State had failed to establish probable cause that S.I. committed the offense with which he was charged. The court then ordered S.I. released from detention but also allotted the case for an adjudicatory hearing at a later date. Subsequently—and over the objection of S.I.'s counsel—the trial court conducted an adjudicatory hearing, found that the State had proved the charge of aggravated assault against S.I. beyond a reasonable doubt, and committed him to the Illinois Department of Corrections, Juvenile Division (DOC). S.I. appeals and raises as his sole issue the claim that once the court found no probable cause, it was statutorily required to dismiss the supplemental delinquency petition and thereafter had no authority to reinstate that petition.

We disagree and affirm.

I. BACKGROUND

In January 1991, the trial court adjudicated S.I. a delinquent minor and made him a ward of the court based upon a delinquency petition the State filed in August 1990. The court then placed S.I. on juvenile probation for 18 months, but in April 1991, the court revoked his probation and committed him to DOC. In doing so, the court noted that S.I.'s wardship was to continue. In August 1991, S.I. was released from DOC.

■ The State filed a supplemental delinquency petition regarding S.I. on February 5, 1992, and the trial court conducted a detention hearing on that date in accordance with the provisions of section 5—10 of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1991, ch. 37, par. 805—10). Section 5—10(1) of the Act reads as follows:

"If the court finds that there is not probable cause to believe that the minor is a delinquent minor it shall release the minor

and dismiss the petition." (Ill. Rev. Stat. 1991, ch. 37, par. 805—10(1).)

At the conclusion of the detention hearing, the court stated the following:

"I am going to find, for the purposes of this hearing only, that there has been no probable cause established. I am going to show the petition on file. I am going to show the minor is ordered released from custody at this time pending hearing ***.

I am going to set the matter down for *** hearing, February the 18th, at 2:00 in the afternoon. That's a date certain for the hearing ***."

At the beginning of the hearing on February 18, 1992, the court referred to discussions the court had just had in chambers with both counsel. The court explained that its finding of no probable cause was based on the prosecutor's failure to properly have S.I. identified in court as the perpetrator of the aggravated assault. The court noted defense counsel that day had argued that section 5—10(1) of the Act requires the court to release the minor *and* dismiss the delinquency petition whenever the court finds no probable cause at the conclusion of the detention hearing. The court acknowledged that defense counsel correctly represented the statutory language, but the court also observed that the State would then immediately make an oral motion to reinstate the supplemental delinquency petition and to proceed thereon without any delay. The court stated for the record that it had indicated to both counsel that it would grant the State's request. The court explained that the State "always [has] a right to refile a petition anytime that they [*sic*] want to."

In response to the trial court's remarks, defense counsel stated that the proceedings scheduled to take place that day should be a nullity based upon section 5—10(1) of the Act. Counsel then explained his position as follows:

"[Section 5—10(1) of the Act] states pretty clearly that the Court shall release the minor and dismiss the petition. If the petition is dismissed, it's true that the State would have leave to refile that petition; however, I believe that things would reset to the start. The Respondent Minor would be entitled to an arraignment hearing, and notice would be required for that hearing. I don't believe that you could simply reinstate things from the position where it—where the petition [was] dismissed, and, that being the case, I would move that the petition be dismissed by the Court and the State be granted leave to refile it, but I don't believe any hearing can take place today."

The trial court disagreed with defense counsel's argument, noting that several teachers from the high school where S.I.'s aggravated assault allegedly took place were present in court pursuant to subpoena, and that not holding the hearing that date would inconvenience those witnesses. The court concluded that "to try to make citizens reappear back in court would be, clearly, putting form over any sort of substance and would be a pretty futile act." The court then entertained the State's oral motion to reinstate the supplemental delinquency petition filed February 5, 1992, and granted that motion over S.I.'s objection. As earlier stated, the State went on to prove the charge against S.I. beyond a reasonable doubt, and the trial court ultimately committed him to DOC.

## II. ANALYSIS

On appeal, S.I. argues that section 5—10(1) of the Act requires that when the trial court finds at a detention hearing that there is no probable cause to believe the minor is a delinquent minor, then the court must not only release the minor, it must also dismiss the petition. Thus, S.I. concludes, no pleading remained pending after the no-probable-cause finding upon which the court could conduct further proceedings. S.I. explains as follows:

> "The simple fact is that in the instant case, the trial court chose to proceed against the minor after finding no probable cause, and without an additional hearing for the State to establish probable cause before adjudicating the minor a delinquent."

Additionally, S.I. argues that section 5—13(5) of the Act also prohibits the trial court's actions in this case. (Ill. Rev. Stat. 1991, ch. 37, par. 805—13(5).) Section 5—13(5) reads as follows: "At any time before dismissal of the petition or before final closing and discharge under Section 5—34 [of the Act], one or more supplemental petitions may be filed in respect of the same minor." (Ill. Rev. Stat. 1991, ch. 37, par. 805—13(5).) Citing this section, S.I. then makes the following argument: "By the plain language of [section 5—13(5) of the Act], once the trial court finds no probable cause and dismisses the petition, it is too late for the State to file a supplemental petition alleging the same delinquent conduct." We disagree with both of these arguments.

■ First, regarding S.I.'s argument concerning section 5—13(5) of the Act, we note that the trial court in the present case *reinstated* a previously filed and technically dismissed supplemental delinquency petition. To paraphrase S.I.'s argument, by the plain language of section 5—13(5) of the Act, that section does not address at all the court's authority to *reinstate* previously dismissed petitions. Further,

as the State points out, no "final closing and discharge" under section 5—34 of the Act ever occurred in this case. That section provides that once a minor has been adjudicated a ward of the court, that wardship continues until either (1) the minor attains the age of 19 years, or (2) the court finds that the best interests of the minor and the public no longer require the wardship and the court orders it terminated. Because neither of these events occurred in the present case, S.I.'s January 1991 adjudication of wardship continued unabated as of February 1992.

■ We also agree with the State's argument that detention hearings conducted under section 5—10 of the Act are comparable in many ways to preliminary hearings conducted under section 109—3 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 109—3). Both such hearings are preliminary in nature and in both the State bears the burden to show probable cause to believe that (1) a crime was committed, and (2) the defendant (or alleged juvenile delinquent) committed the crime. (*People v. Puleo* (1981), 96 Ill. App. 3d 457, 465, 421 N.E.2d 367, 373.) Further, in both such hearings, the State may meet its burden of demonstrating probable cause by the presentation of hearsay testimony. (*People v. Blackman* (1980), 91 Ill. App. 3d 130, 133, 414 N.E.2d 246, 248.) Also, in both such hearings, the court need not (and ought not) make findings as to each count pending in either a multicount delinquency petition or a multicount criminal complaint or information. The purpose of the preliminary hearing has been fulfilled once the court can find that there is probable cause to believe defendant committed *any felony offense* of the several felony charges that are then before the court. (See Ill. Rev. Stat. 1991, ch. 38, par. 109—3(a); see also *People v. Redmond* (1977), 67 Ill. 2d 242, 248-49, 367 N.E.2d 703, 706-07.) Similarly, once the court has found probable cause to believe an alleged delinquent committed *any offense* of the several offenses charged in the delinquency petition then before the court, the first issues posed to the court in a detention hearing have been answered: (1) a crime was committed, and (2) the alleged delinquent committed it. All that remains for the court to decide is whether it is a matter of immediate and urgent necessity that the minor continue to be detained pending the adjudicatory hearing.

■ The primary purpose of a juvenile detention hearing is to ensure that no alleged juvenile delinquent will be held in custody more than 36 hours, exclusive of Saturdays, Sundays, and court-designated holidays, unless a judge—not just police officers or prosecutors—determines that sufficient probable cause exists to believe that the detained

minor is a delinquent minor as charged. (See Ill. Rev. Stat. 1991, ch. 37, pars. 805—9(1), 805—10(6).) Therefore, consistent with this purpose, the *significant remedy* the law provides to a minor in detention when the State cannot show probable cause at a detention hearing is *release* from further detention. The court ordered that remedy in the present case.

■ While section 5—10(1) of the Act also speaks of the court "dismiss[ing] the petition," that language provides only a minor remedy because nowhere does section 5—10 or any other provision in the Act suggest that the State would be barred from reinstating the dismissed delinquency petition. Indeed, to hold otherwise would turn a finding of no probable cause at a detention hearing into a jeopardy determination, barring reinstatement of charges just as fully as if the juvenile had been charged, been given a trial on the merits (an adjudicatory hearing), and found not guilty (not to be a delinquent minor).

We further reject S.I.'s argument that permitting the State to reinstate the dismissed delinquency petition somehow deprives him of a procedural protection afforded by the Act. As we quoted earlier, S.I. argues that the State cannot proceed to an adjudicatory hearing on the delinquency petition without first establishing probable cause at a detention hearing. However, the Act does not require a probable cause determination prior to an adjudicatory hearing when the State merely files a delinquency petition and does not seek to detain the alleged delinquent. Only when the State seeks to detain a minor after filing a delinquency petition against him does the Act require the State to show probable cause at a hearing conducted prior to the adjudicatory hearing, with the latter being the trial on the merits of the delinquency petition. See Ill. Rev. Stat. 1991, ch. 37, par. 805—20.

In contrast to juvenile court proceedings, Illinois law does require a probable cause determination to be made in every felony case before the accused felon may be brought to trial. That probable cause determination may be made either by a judge conducting a preliminary hearing under section 109—3 of the Code or by a grand jury under section 112—4 of the Code (Ill. Rev. Stat. 1991, ch. 38, pars. 109—3, 112—4). See *People v. Mennenga* (1990), 195 Ill. App. 3d 204, 210-11, 551 N.E.2d 1386, 1390-91.

Section 109—3(b) of the Code reads, in pertinent part, as follows: "After hearing the testimony if it appears that there is not probable cause to believe the defendant guilty of any offense the judge shall discharge him." (Ill. Rev. Stat. 1991, ch. 38, par. 109—3(b).) Again, the primary effect of this no-probable-cause finding is to have a criminal defendant released from custody (or, if he had previously made a

bail bond, released from further required compliance with the conditions of that bond). As with juvenile delinquency petitions, the felony charges against the defendant for which no probable cause was found at the preliminary hearing should be dismissed; and again, as with juvenile delinquency petitions, the State may refile those charges.

In *People v. Zook* (1988), 177 Ill. App. 3d 62, 63, 531 N.E.2d 1066, 1067, this court addressed the consequences of a finding of no probable cause at a preliminary hearing and wrote the following: "An order of dismissal for lack of probable cause is not an acquittal and is not final, as the State may later indict the accused or submit a new information." More recently, in *Mennenga*, this court again addressed the same issue and wrote the following:

"The State cannot appeal from a dismissal on a finding of no probable cause. [Citation.] The defendant has not been convicted or acquitted, and has not been placed in double jeopardy. [Citations.] In absence of double jeopardy, or a violation of the speedy-trial provisions, public policy justifies the State being able to proceed if additional evidence of the offense is obtained. *** We recognize that no additional evidence was indicated in the present case.

If the State proceeds first by information, and a finding of no probable cause results from the preliminary hearing, our courts have recognized that the State can subsequently proceed with a grand jury indictment for the same offense. [Citation.] The State also can proceed by filing an information and then, prior to the preliminary hearing, obtain grand jury indictments, thus avoiding the necessity of the preliminary hearing. [Citation.] A finding of no probable cause at a preliminary hearing does not, in itself, bar proceeding on a new information charging the same offense and with a new preliminary hearing. [Citation.] This court *** [has] conditioned the validity of a second preliminary hearing upon the absence of harassment, bad faith, or fundamental unfairness." *Mennenga*, 195 Ill. App. 3d at 210-11, 551 N.E.2d at 1390-91.

■ We conclude that because of the similarity between juvenile detention hearings under section 5—10 of the Act and preliminary hearings under 109—3 of the Code, the State should be permitted to refile or reinstate juvenile delinquency petitions regarding which no probable cause has been found at detention hearings, just as the State is permitted to refile or reinstate felony charges for which no probable cause was found at preliminary hearings. Furthermore, we agree with the trial court in the present case that requiring the State here

to file a new delinquency petition and to repeat the technical processes of securing service of summons upon all respondents (see Ill. Rev. Stat. 1991, ch. 37, pars. 805—15, 805—16), as well as requiring the inconvenience to civilian witnesses who had already responded to subpoenas by appearing in court, would in fact elevate form over substance and would not further any legitimate procedural protections enjoyed by S.I. Thus, we hold that the trial court had discretion to handle the charging instruments in the fashion it did, and we find no abuse of that discretion.

III. Conclusion

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

KNECHT and COOK, JJ., concur.