*In re* L.J., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. L.J., a Minor, Respondent-Appellee).

First District (3rd Division)    No. 1—92—1881

Opinion filed August 23, 1995.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Kevin J. Golden, Assistant State's Attorneys, of counsel), for the People.

Susan P. Jordan and Mary B. Koberstein, both of Lord, Bissell & Brook, and Maria Woltjen, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

The State filed a petition for adjudication of wardship in the juvenile court, alleging that the respondent, L.J., a minor, was delinquent in that he committed the offense of first degree murder. The State then filed a motion in the juvenile court for a transfer of L.J. to the general adult criminal division of the circuit court to be prosecuted for first degree murder. After a hearing the juvenile court denied the State's motion to transfer, and the State has appealed from the denial of its motion. We reverse and remand with directions.

At the time of the homicide L.J. was 14 years and 6 months old. The victim, Antwon Blackwell, was 13 years old. Blackwell was killed by a single gunshot wound to the chest.

The shooting occurred on October 16, 1991, at 6:30 p.m. near 6556 South Bishop, in Chicago. L.J. and D.H. approached Blackwell and four of his friends who were standing near a street corner. L.J. and D.H. were members of a street gang known as the Black Disciples. Blackwell and his friends were not members of any street gang, although they knew L.J. and D.H. from living in the neighborhood.

L.J. and D.H. began to argue with Blackwell apparently because L.J. and D.H. wanted Blackwell to join the Black Disciples. Blackwell

was pushed to the ground and kicked. D.H. told L.J. to "Shoot him. Shoot him." L.J. pulled out a gun and shot Blackwell. While Blackwell was on the ground holding his stomach and screaming, L.J. and D.H. left the scene. Blackwell died from the gunshot wound, which pierced his chest and heart. L.J. and D.H. were arrested and charged with murder.

In reviewing the juvenile court's order, we make some preliminary observations. If a petition for adjudication of wardship alleges commission by a minor 13 years of age or older of an act that constitutes a crime in Illinois, and, on motion by the State, after investigation and hearing but before commencement of the adjudicatory hearing, the juvenile court finds that it is not in the best interests of the minor or of the public to proceed under the Juvenile Court Act of 1987 (Juvenile Court Act), the juvenile court may enter an order permitting prosecution under the criminal laws. (705 ILCS 405/5—4(3)(a) (West 1992).) The State's motion to transfer implicates this discretion of the juvenile court.

In a hearing on a motion to transfer a minor from the jurisdiction of the juvenile court to the general adult criminal division of the circuit court for prosecution, the burden is upon the State to present sufficient evidence to persuade the juvenile court to grant the motion to transfer. (*People v. D.B.* (1990), 202 Ill. App. 3d 194, 200, 559 N.E.2d 873, 877.) On appeal, the reviewing court may not merely substitute its judgment for that of the juvenile court. Rather, the reviewing court must determine whether the juvenile court abused its discretion in ruling on the motion to transfer. The discretion of the juvenile court, however, is limited and controlled by the standards set forth in the Juvenile Court Act.

The Juvenile Court Act lists seven factors which the juvenile court must consider in reaching its decision on whether to grant the motion to transfer. (705 ILCS 405/5—4(3)(b) (West 1992).) Specifically, the seven factors listed in the Juvenile Court Act include:

"(i) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (ii) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (iii) the age of the minor; (iv) the previous history of the minor; (v) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; (vi) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority; and (vii) whether the minor possessed a deadly weapon when committing the alleged offense." 705 ILCS 405/5—4(3)(b) (West 1992).

■ Here, the juvenile court found that the State presented sufficient evidence upon which a grand jury may be expected to return an indictment and that there is sufficient evidence that the alleged offense was committed in an aggressive and premeditated manner. Thus, there is no dispute that the State has presented sufficient evidence to grant its motion to transfer insofar as the first two factors to be considered.

The third factor to be considered is the age of the minor. L.J. was 14 years and 6 months old at the time of the homicide. Fifteen-year-old minors are automatically tried as adults for the crimes of first degree murder, aggravated criminal sexual assault, armed robbery when the armed robbery was committed with a firearm, and unlawful use of weapons under prescribed circumstances. (705 ILCS 405/5—4 (6)(a) (West 1992).) It follows that L.J. would have automatically been tried as an adult if the homicide had occurred six months later.

The only comment that the juvenile court made about L.J.'s age is that "the age of the minor is 15 years one month and one day as of today (at the time of the hearing)." The record shows, however, that L.J.'s life experiences are that of someone way beyond his age. He has come in contact with the police for criminality on numerous occasions, and he is admittedly a member of what appears to be a notorious street gang. L.J. is plainly not a stranger to the criminal justice system or adult experiences.

While it is true that L.J. is a minor in terms of his chronological age, in reality he has plainly ceased being a minor. Thus, the State has presented sufficient evidence to establish that his age alone does not balance or tilt the scales in his favor when considering whether he should remain under the protection of the juvenile court or be transferred to the general adult criminal division of the circuit court for prosecution of first degree murder. Moreover, the evidence relating to L.J.'s age leans heavily in favor of granting the State's motion to transfer.

The fourth factor to be considered is the previous history of the minor. L.J.'s history with the police includes station adjustments for theft, aggravated assault, trespassing and criminal damage to property. His involvement with the juvenile court includes referrals for possession of a stolen motor vehicle, burglary, aggravated assault and unlawful use of a weapon.

In addition, L.J. has been a member of the Black Disciples street gang since he was 11 years old. The homicide for which he is charged involves the killing of an innocent 13-year-old, while being assisted and aided by another Black Disciples street gang member. In 1991, L.J. was enrolled at Montefiore School but attended only one day. He

also had disciplinary problems at the Juvenile Temporary Detention Center. Specifically, he was caught scratching his street gang signals into a table at the juvenile detention center. Clearly, the previous history of L.J. militates in favor of granting the State's motion to transfer.

The fifth factor to be considered is whether there are facilities particularly available to the juvenile court for the treatment and rehabilitation of the minor. In addressing this factor we initially note that if L.J. is transferred to the general adult criminal division of the circuit court for prosecution and convicted and sentenced to imprisonment, he may still be confined in the juvenile division of the Department of Corrections. (705 ILCS 405/5—33(2), 5—34(1) (West 1992); *People v. M.D.* (1984), 101 Ill. 2d 73, 87, 461 N.E.2d 367, 374.) Thus, the facilities available to benefit L.J. may be the same while he remains a minor whether he is adjudged a delinquent in the juvenile court or found guilty of first degree murder in the general adult criminal division of the circuit court.

Also, the record manifests that L.J. has not benefited in any way while being involved in the juvenile court system. He was sent to Montefiore School, which specializes in treating children with behavioral disorders, and he refused to attend. The school reports describe L.J. as disruptive, a fighter and defiant, and that he refuses to work. His supervisor at Montefiore School stated that his problems "revolve around his refusal to comply with the rules and regulations of the school." In addition, he was disruptive while at the Juvenile Temporary Detention Center.

It follows that under the circumstances of this case the only reasonable conclusion that one can reach is that the facilities of the juvenile court for the treatment and rehabilitation of L.J. are not any more *particularly* available as a benefit to him than the facilities of the general adult criminal division of the circuit court. Thus, the fifth factor for consideration supports granting rather than denying the State's motion to transfer.

The sixth factor to be considered is whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. This factor requires interaction between several of the other factors that are considered. It also means, however, that the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. Here, at the hearing on the motion to transfer it was stipulated that in the general adult criminal division of the circuit court the sentence on a conviction of first degree murder is 20 to 60 years'

imprisonment, whereas, in the juvenile court system, the recommended sentence on the same charge is 30 months in the Juvenile Department of Corrections. Should L.J. remain in the juvenile court system, and be found delinquent, he would not remain in custody beyond his minority. 705 ILCS 405/5—33(2), 5—34(1) (West 1992).

L.J. is an admitted street gang member who was involved in this incident with another member of the gang. L.J. is accused of shooting and killing an innocent 13-year-old apparently for the reason that the 13-year-old would not join the gang. The 13-year-old was not a member of any gang. At the time that the briefs on appeal were written and filed, L.J. was 17 years old. At no time has he indicated remorse for the homicide. He appears to be a recalcitrant person. A psychologist who interviewed L.J. stated that he has "demonstrated little overt anxiety and denied verbally, and through attitude, that he was concerned about his current legal difficulties."

Under the circumstances, the only reasonable conclusion that one can reach is that L.J. will continue to be dangerous to himself and to the public after he reaches the age of 21. Surely there is too great a risk to the public to keep L.J. in a system that mandates that he be at large when he becomes 21 years old. It is in the best interest of L.J. and the public that he be tried as an adult for the murder of the 13-year-old victim in this case.

The final factor to be considered is whether the minor possessed a deadly weapon when committing the alleged offense. There is no dispute as to this factor since the victim died of a gunshot wound to the chest. It follows that this factor supports the State's motion to transfer.

In view of the evidence in relation to each of the seven factors that the juvenile court considered to determine whether L.J. should be transferred to the general adult criminal division of the circuit court for prosecution of the murder of Antwon Blackwell, the juvenile court clearly abused its discretion in denying the State's motion to transfer. Moreover, there are no redeeming facts that warrant keeping L.J. under the aegis of the juvenile court system rather than being tried for first degree murder in the general adult criminal division of the circuit court. Plainly, the State's motion to transfer should have been granted.

Accordingly, the order denying the State's motion to transfer is reversed and the case is remanded for the entry of an order consistent with what is stated herein and for further proceedings.

Reversed and remanded with directions.

TULLY and CERDA, JJ., concur.