668 N.E.2d 70 (1996)
282 Ill. App.3d 839
217 Ill.Dec. 885
In re R.L., a Minor (The People of the State of Illinois, Plaintiff-Appellant, v. R.L., a Minor, Respondent-Appellee).
In re O.U., a Minor (The People of the State of Illinois, Plaintiff-Appellant, v. O.U., a Minor, Respondent-Appellee).
In re R.D., a Minor (The People of the State of Illinois, Plaintiff-Appellant, v. R.D., a Minor, Respondent-Appellee).
Nos. 1-95-0991, 1-95-1308 and 1-95-1578.
Appellate Court of Illinois, First District, Third Division.
June 26, 1996.
*71 Jenner & Block, Chicago (Diana C. White, Gabriel A. Fuentes, of counsel), for appellee 1-95-0991, In Re R.L.
Rita A. Fry, Public Defender of Cook County, Chicago (Elizabeth Clarke, Assistant Public Defender), for appellee 1-95-1308, In Re O.U. and 1-95-1578, In Re R.D.
Jack O'Malley, State's Attorney of Cook County, Chicago (Renee Goldfarb, Peter D. Fischer, Robert Robertson, of counsel), for appellant 1-95-0991, In Re R.L. and 1-95-1308, In Re O.U.
Jack O'Malley, State's Attorney of Cook County, Chicago (Renee Goldfarb, Peter D. Fischer, Robert Robertson, Tracey Annen, of counsel), for appellant 1-95-1578, In Re R.D.
Justice GREIMAN delivered the opinion of the court:
We have consolidated these three cases[1] because they share a common issue: whether the finding of probable cause at a minor's detention hearing, required to be held within 36 hours of "arrest," is deemed a finding of probable cause at a subsequent hearing to determine whether the minor ought to be transferred to the adult criminal justice system, and, if not, what recognition is to be afforded the transcript of the prior proceedings at the transfer hearing.
In each case, the minor was taken into custody and within 36 hours a detention hearing was commenced pursuant to section 5-10 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5-10 (West 1992)). That section requires the juvenile court to find there is probable cause to believe that the minor is a delinquent minor and that "it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained." 705 ILCS 405/5-10(2) (West 1992).
The State believes that a finding of probable cause in the detention hearing binds the transfer hearing court on issues of probable cause for transfer out of the juvenile system under a theory of collateral estoppel. The minor in each case argues that the issues raised in the detention hearing are different than those of the later proceedings and that the summary nature of the detention hearing imposed by the 36-hour time limit denies the minor fundamental fairness in the administration of juvenile justice, thus requiring two independent hearings.
Another approach would be that the prior determination does not bind the transfer court, but the transcript might come into evidence and the court could then make a determination that the requirement of "probable cause" for the transfer hearing was satisfied by the evidence adduced at the earlier hearing and the rebuttable presumption that the minor ought not be dealt with under the Act then arises. While this is a seductive middle road, prosecutors might find themselves more at risk in chancing that the transcript will suffice.
Overlaid upon the various sections of the Act are the stated goals of the Act, as set out in the preamble:
"In all proceedings under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act. This Act shall be administered in a spirit of humane concern, not only for the rights *72 of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1-2(2) (West 1992).
The first hearing is mandated by section 5-10 of the Act and is defined as a "Detention or shelter care hearing," which provides:
"At the appearance of a minor before the court at the detention or shelter care hearing, all witnesses present shall be examined before the court in relation to any matter connected with the allegations made in the petition. No hearing may be held unless the minor is represented by counsel.
(1) If the court finds that there is not probable cause to believe that the minor is a delinquent minor it shall release the minor and dismiss the petition.
(2) If the court finds there is probable cause to believe that the minor is a delinquent minor, the minor, his or her parent, guardian, custodian and other persons able to give relevant testimony shall be examined before the court. * * *
If the court finds that it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained or placed in a shelter care facility or that he or she is likely to flee the jurisdiction of the court, the court may prescribe detention or shelter care * * *." 705 ILCS 405/5-10(1), (2) (West 1992).
"Delinquent minor" means any minor who, prior to his seventeenth birthday, has violated or attempted to violate, regardless of where the act occurred, any federal or state law or municipal ordinance. 705 ILCS 405/5-3(1) (West 1992).
The subsequent hearing, regulated by section 5-4(3.3), is commenced upon the filing of a motion and petition by the State to determine whether the minor is not an appropriate subject to be dealt with under the Act and should be transferred to the criminal court and provides:
"If the State's Attorney files a motion under subsection (3)(a) to permit prosecution under the criminal laws and the petition alleges the commission by a minor 15 years of age or older of: (i) a Class X felony other than armed violence; (ii) aggravated discharge of a firearm; (iii) armed violence with a firearm when the predicate offense is a Class 1 or Class 2 felony and the State's Attorney's motion to transfer the case alleges that the offense committed is in furtherance of the criminal activities of an organized gang and the case is not required to be prosecuted under the criminal laws of Illinois as provided by subsection (3.1) or (3.2); (iv) armed violence with a firearm when the predicate offense is a violation of Section 401, subsection (a) of Section 402 * * * of the Illinois Controlled Substances Act; or (v) armed violence when the weapon involved was a machine gun or other weapon described in subsection (a)(7) of Section 24-1 of the Criminal Code of 1961, and, if the juvenile judge designated to hear and determine motions to transfer a case for prosecution in the criminal court determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the minor is not a fit and proper subject to be dealt with under the Juvenile Court Act of 1987, and that, except as provided in paragraph (b), the case should be transferred to the criminal court." 705 ILCS 405/5-4(3.3)(a) (West Supp.1995.)
Once the court determines that probable cause exists to believe the allegations in the State's petition and motion, a rebuttable presumption of transfer is triggered. To rebut the presumption of transfer, the minor must come forward with favorable evidence relating to the factors enumerated in paragraph (b), which are:
"(i) The circumstances and gravity of the offense alleged to have been committed by the minor.
(ii) The age of the minor.
(iii) The degree of criminal sophistication exhibited by the minor.
(iv) Whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction.

*73 (v) The minor's previous history of delinquency.
(vi) Whether the offense was committed in an aggressive, premeditated or calculated manner.
(vii) Whether there are sufficient facilities available to the juvenile court for the treatment and rehabilitation of the minor." 705 ILCS 405/5-4(3.3)(b) (West Supp. 1995).

IN RE R.L.
After a probable cause hearing on the day of the respondent's arrest, the juvenile court made a finding of immediate and urgent necessity that the 15-year-old minor be detained. A single police officer testified that there had been two individuals who fired shots at a group of teenagers near South Shore High School, wounding one of the students. One of the group identified respondent, a student at South Shore, as one of the two shooters, although he was apparently unable to determine whether the minor was the shooter of the wounded student. No evidence was offered that the minor acknowledged his involvement.
The initial petition for adjudication of wardship charged the minor with aggravated battery, aggravated battery with a firearm, attempted murder, aggravated discharge of a firearm and armed violence. At the detention hearing, the State informed the court that it intended to file a motion to permit prosecution of the minor as an adult and that it had previously so advised the minor's counsel. At the continued section 5-4(3.3) hearing, the trial court took "judicial notice" of the prior finding of probable cause, but declined to make a finding of probable cause for the purpose of transfer because the proceeding lacked fundamental fairness to be accorded a minor in connection with a hearing of such magnitude, so that the mere presence of a transcript of the prior hearing was insufficient.

IN RE O.U.
The 15-year-old was found to be a "delinquent minor" after a hearing, within 36 hours of his being taken into custody, which consisted of the testimony of two police officers who stated that there had been a shooting outside of Morton West High School, that the victim had identified the respondent, whom he knew from school, from an array of pictures, and that, when confronted by the officers, the minor implicated himself and provided information that led to the officers recovering the weapon used in the shooting. A written statement was prepared but not signed.
On allegations that the minor was guilty of the offenses of attempted murder, aggravated battery with a firearm, armed violence and aggravated battery, the court made a finding of probable cause and ordered the minor detained. Thereafter, the State filed a petition and motion alleging that there was probable cause only on the charge of aggravated battery with a firearm and dismissed the other charges that had been considered at the detention hearing. The State maintained that the charged crime was one of those defined in section 5-4(3.3) and thus established a rebuttable presumption that the minor should not remain in the juvenile justice system.
The State offered the transcript from the detention hearing, which was admitted without objection. The trial court then declined to find probable cause, ruling that the State's sole reliance on the initial finding of probable cause was insufficient evidence of probable cause at the transfer hearing, and found the State's reliance "fundamentally unfair" and at odds with the minor's rights to due process. The court therefore denied the State's motion to transfer.

IN RE R.D.
Following a detention hearing the trial court found, based on the testimony of two police officers and the victim's eye-witness identification of the minor, probable cause to believe that the minor committed attempted murder, aggravated battery with a firearm and armed violence in the shooting of William Smith and ordered the minor detained.
Subsequently, the State moved to transfer the minor pursuant to section 5-4(3.3) and called the same officers, who repeated their earlier testimony.
*74 The trial court found that there was insufficient evidence to support a finding of probable cause as to the attempted murder charge, but found probable cause to believe the minor committed aggravated battery with a firearm. The trial court then denied the transfer motion, finding section 5-4(3.3) requires a finding of probable cause as to each count alleged in the State's petition and motion.
The role of an appellate court when reviewing transfer decisions is to determine whether the juvenile court has abused its discretion. People v. Cooks, 271 Ill.App.3d 25, 36, 207 Ill.Dec. 734, 648 N.E.2d 190 (1995); People v. Taylor, 76 Ill.2d 289, 300-01, 29 Ill.Dec. 103, 391 N.E.2d 366 (1979). As discussed below, we find no such abuse in R.L., We are not so constrained where the trial court's error is in the application of law, and we find that in O.U. and R.D. the trial court made an error of law. In R.D., the minor was afforded a separate hearing, at which the trial court found that the State did not carry its burden in proving probable cause as to both the charged offenses. Nothing in section 5-4(3.3) requires the State to prove probable cause for all of the offenses charged. It is enough that there was probable cause on one of the offenses and that crime was one of the offenses set out in section 5-4(3.3).
In O.U., the trial court based its decision to deny the State's transfer motion on its perception that "fundamental fairness" required such a ruling. While we agree that notions of fundamental fairness require additional process at the transfer hearing, we believe the trial court's decision would have benefited from substantive consideration of the allegations in the State's petition and transfer motion.
Apart from any mandate of fundamental fairness, we interpret the language of section 5-4(3.3) as requiring a probable cause determination independent of the probable cause finding made at the detention hearing. The rebuttable presumption of section 5-4(3.3) will not be invoked unless "the juvenile judge designated to hear and determine motions to transfer a case for prosecution in the criminal court determines that there is probable cause to believe that the allegations in the petition and motion are true." (Emphasis added.) 705 ILCS 405/5-4(3.3)(a) (West Supp.1995).
We should give enactments of our General Assembly an interpretation based upon the plain and ordinary meaning of the language employed. Thomas v. Greer, 143 Ill.2d 271, 278, 158 Ill.Dec. 1, 573 N.E.2d 814 (1991). Moreover, reviewing courts cannot depart from the plain meaning of an unambiguous statute by creating exceptions or limitations that the legislature did not express. Eagan v. Chicago Transit Authority, 158 Ill.2d 527, 532, 199 Ill.Dec. 739, 634 N.E.2d 1093 (1994). The State would have us add language expressing legislative intent to essentially merge the probable cause findings in the detention and transfer proceedings, when each proceeding involves different and "critically important rights" (Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1054-55, 16 L.Ed.2d 84 (1966)) that demand independent process. We decline this invitation.
Section 5-4(3.3) mandates that the judge assigned to hear the transfer motion must "hear" and "determine" the probable cause issues. That express requirement should put to rest the State's argument that the prior determination of probable cause is binding at the transfer hearing.
Although we believe that the language of section 5-4(3.3) alone mandates that the juvenile court provide two separate probable cause determinations and hearings, we also believe that the purposes of the respective hearings are so different and unique that due process and the notion of fundamental fairness expressed in Kent bid us require separate determinations of probable cause.
Having determined that a separate hearing is required, we next consider whether such separate hearing requirement can be satisfied by the mere filing of the transcript from the earlier hearing if those proceedings have the kind of completeness that would allow the second judge to be comfortable finding probable cause on the basis of such transcript either alone or together with additional evidence offered by the State.
*75 We need not cite authority for the proposition that probable cause can be shown by hearsay evidence. The issuance of search warrants and preliminary hearings are perhaps the most common situations that come to mind. However, probable cause has not always had the same meaning in companion cases where the objects of the proceedings have a different purpose. (People v. Moore, 138 Ill.2d 162, 149 Ill.Dec. 278, 561 N.E.2d 648 (1990) (judicial finding of no probable cause in driver's license summary suspension hearing did not preclude finding of probable cause in subsequent driving-under-the influence case). In two of the three cases before us, the trial court admitted the transcript without objection or took "judicial notice" of its existence. Admittedly, there are discrete differences between the several cases consolidated here. The finding in R.L. is based on the testimony of a single police officer who had a short conversation with one of the members of a crowd of youngsters at whom respondent allegedly fired a weapon. In O.U., two officers conducted the investigation and their testimony included evidence of confrontation with the minor, who implicated himself in the shooting. However, in O.U., the detention hearing court found probable cause with reference to several counts, while at the transfer hearing, the State set out only one of the charged counts. The initial finding of probable cause was not count specific so that there was no way for the transfer hearing judge to be aware of which count was found to have probable cause (it is acknowledged that the detention judge and transfer hearing judge were the same individual). Despite the differences, we believe that the State must show probable cause without resort to the prior hearing. If we allow the use of the prior transcript without additional evidence, counsel is limited to only coming forward with the responses allowed by section 5-4(3.3)(b) rather than having a real opportunity to test the State's case with real cross-examination after appropriate investigation and thoughtful interaction between counsel and the minor.
Accordingly, if objection is made to the introduction of the transcript, the court should decline to admit it into evidence. Nothing herein precludes the court from considering the transcript if there is not an objection interposed or if the minor stipulates to the admission of the transcript. In O.U., the transcript was admitted without objection but the court declined to find probable cause because of the differences in the two proceedings of the charged counts.
The State raises concerns about judicial economy. If economies are to be achieved in the criminal justice system, they should be elsewhere than in the disposition of matters affecting our children.
We must examine the distinct purposes for each hearing and the dynamics surrounding each. The detention hearing must be heard within 36 hours of the minor's arrest, and our courts have recently drawn a bright line with respect to the recognition of statutory deadlines when they relate to minors. See, e.g., In re S.G., 277 Ill.App.3d 803, 214 Ill.Dec. 583, 661 N.E.2d 437 (1996) (setting strict time limitations in abuse and neglect hearings and citing In re C.T.A., 275 Ill.App.3d 427, 211 Ill.Dec. 733, 655 N.E.2d 1116 (1995), which dealt with extension of the period of supervision for a delinquent minor).
More often than not, defense counsel has been advised of the proceedings only a few minutes or hours before he or she is expected to appear and cross-examine witnesses who are usually testifying to hearsay in the development of probable cause. Counsel is unlikely to have had an opportunity to conduct even the most cursory investigation of the charges facing the young client.
Even if we were not convinced that the language of the statute requires separate consideration of the proof of probable cause or that the time constraints of the detention hearing impair counsel's ability to adequately represent the client, it is the purpose of each hearing that mandates separate determination of the principal issue. The purpose of the detention hearing is to determine whether the minor is "a delinquent minor" and whether there is "immediate and urgent necessity" to detain the minor for his or her own safety or for the safety of others upon a finding of probable cause that the minor has committed a felony or misdemeanor or violation of an ordinance. But this need not be *76 the end of the line for the minor. The court may amend or change its order upon a subsequent showing that the minor is not in need of detention. The detention order is provisional by its very nature. It addresses the concerns of the minor and society at a particular time, while the aim of the transfer hearing is one that will have a lasting and permanent effect upon the child in the event a transfer is ordered. People v. Clark, 119 Ill.2d 1, 15, 115 Ill.Dec. 613, 518 N.E.2d 138 (1987).
Illinois has an almost century-old commitment to appropriate treatment of minors; the nation's first juvenile court was established in 1899 in Chicago upon the advocacy of Jane Addams. Although Ms. Addams never envisioned children with Mac 10's, Uzis or .357 magnums, the sense of the preamble to the Act remains a strong statement of purpose.
Examining the preamble, we question whether the usually abbreviated detention hearing can stand for the satisfaction of the transfer hearing and meet the test of an Act "administered in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1-2(2) (West 1992). We need not take the time to point out the obvious: that which awaits the child upon transfer to the adult criminal system. We take note that O.U. may spend a maximum of six years in the juvenile system, but in the event of transfer may be sentenced to 30 years in prison. 720 ILCS 5/12-4.2 (West 1992).
In the three decades since the United States Supreme Court decided Kent, our supreme court, following Kent, has also acknowledged the need for fundamental fairness in the treatment of minors generally and in the procedures surrounding transfer hearings in particular. (Clark, 119 Ill.2d at 11, 115 Ill.Dec. 613, 518 N.E.2d 138.) In Clark, People v. P.H., 145 Ill.2d 209, 235, 164 Ill.Dec. 137, 582 N.E.2d 700 (1991), and Taylor, 76 Ill.2d 289, 29 Ill.Dec. 103, 391 N.E.2d 366, the parameters of the judge's responsibility have been set out. The recent amendment to the Act shifts much of the burden of coming forward with evidence that the court must consider and it is because of that shift of the burden, rather than in spite of it, that the proof of probable cause at the transfer hearing requires greater scrutiny.
The mandate of fundamental fairness extends to the hearing under section 5-4(3.3) and requires that defense counsel properly represent his or her young client. It is difficult to imagine that such representation can be expected from counsel who has been in the case for a few hours at most and may not have met the client until the morning of the hearing.
In summary, we hold that (i) the finding of probable cause at the detention hearing does not bind the trial court as to probable cause at the transfer hearing and the minor is entitled to a de novo hearing, (ii) the transcript of the detention hearing may not be admitted at the transfer hearing unless by stipulation or if no objection is interposed by the minor, (iii) if the transcript is introduced by stipulation or by reason of the failure of the minor to object, it may be considered by the trial court together with any other evidence as proof of probable cause.
For the reasons set forth above, we affirm the trial court's finding in R.L. that section 5-4(3.3) requires its own probable cause hearing and affirm the decision to deny the State's transfer motion in the absence of such a hearing.
We reverse the trial court in O.U., because, although the transcript was admitted without objection, the trial court apparently decided the transfer issue on procedural grounds. We remand to allow the trial court to conduct a new transfer hearing.
We reverse the trial court in R.D., where the minor was afforded a proper transfer hearing with evidence in the proof of probable cause of a crime provided in section 5-4(3.3), but remand to afford the minor an opportunity to provide evidence of the factors established in section 5-4(3.3)(b) to rebut the presumption that arises upon the proper finding of probable cause.
No. 1-95-0991, Affirmed.
No. 1-95-1308, Reversed and remanded.
*77 No. 1-95-1578, Reversed and remanded with instructions.
TULLY, P.J., and CERDA, J., concur.
NOTES
[1] Two other cases addressing the precise question presented in these cases are also pending in the First District of the Illinois Appellate Court, In re J.E. (No. 1-95-1271) and In re W.J. (No. 1-95-1577). Since all of the parties, except in one instance, have identical counsel, we are at a loss to understand why the parties did not seek to consolidate unless they engaged in a version of judicial roulette.