668 N.E.2d 1052 (1996)
282 Ill. App.3d 794
218 Ill.Dec. 220
In the Interest of J.E., a minor.
The People of the State of Illinois, Plaintiff-Appellant,
v.
J.E., a minor, Defendant-Appellee.
No. 1-95-1271.
Appellate Court of Illinois, First District, First Division.
July 15, 1996.
*1053 Jack O'Malley, State's Attorney, County of Cook (Renee Goldfarb, Peter D. Fischer, Robert Robertson, Asst. State's Attorneys, of counsel), for appellant.
Steven A. Drizin, Thomas F. Geraghty, Northwestern University Legal Clinic, Chicago, for appellee.
Justice WOLFSON delivered the opinion of the court:
This case requires us to examine a statutory procedure that routes a juvenile offender into the adult criminal justice system.
The State contends a finding of probable cause at a minor's detention hearing, without more, creates a rebuttable presumption that the minor's case should be transferred from the juvenile court to the criminal court.
In this case, the trial judge at the transfer hearing refused to adopt the probable cause finding made at the detention hearing. He also held the State failed to establish probable cause to transfer on all counts it had charged. The motion to transfer was denied.
We conclude that the probable cause finding made at the detention hearing cannot be used to establish a rebuttable presumption of transfer at the transfer hearing. We also *1054 find it is not necessary for the State to establish probable cause to transfer on each charge listed in its motion. For these reasons, we reverse the order denying the motion to permit prosecution of a minor under the criminal laws and remand this case for a new transfer hearing.

FACTS
J.E.'s detention hearing (705 ILCS 405/5-10) was held February 3, 1995. J.E. was two months shy of 17 at the time. The petition for adjudication of wardship contained five charges against J.E.: two counts of aggravated battery, one count of aggravated discharge of a firearm, one of attempt murder, and one of armed violence.
The charges grew out of the shooting of Kenny Mercado (Mercado) on January 28, 1995, at 1637 North Artesian in Chicago.
Officer Joseph Corona (Corona) was the only witness at the detention hearing. He spoke to Mercado about three days after the shooting. Mercado told him he was outside his home when a car pulled up. Someone came out of the car and began shooting at him. Mercado described the car as "a brownish color 98 with very dark tinted windows." There was damage on the left side of the car. One bullet went into Mercado's arm and lodged in his shoulder. He was taken to a hospital.
Corona spoke with Marquis Carter, who said he was walking in the area when the shooting took place. Carter said he saw the car pull up. He described it as a "brownish 98 with very, very dark tinted windows. Then someone came out of the car and began firing. He said he was familiar with the shooter and knew where that person "hung around."
Corona was familiar with a person who drove the described car. Physical descriptions from witnesses matched that person. Corona and others were brought to the 14th district police station, where they looked at photos of gang members. J.E.'s photo was identified as the shooter, although the record is unclear as to which witness made that identification.
J.E. was picked up and taken to the police station for a lineup. Marquis Carter identified J.E. as the shooter.
On cross-examination, Corona said that at first J.E. was tentatively, not positively, identified. Counsel asked:
Q. And Marquis Carter, by the way, is a member of the gang called the Satan Disciples, isn't that right?
The State's objection to the question was sustained on the grounds that it was irrelevant to probable cause.
After establishing that Carter was 15, counsel asked:
Q. And you don't know where Marquis Carter was when he allegedly observed these events that occurred on January 28th of 1995, isn't that correct?
The State's objection was sustained on the grounds that "this is discovery."
After Corona said there were four people in the car, defense counsel attempted to ask him about statements contained in the general offense case report made out by beat officers on the day of the shooting. The judge sustained the State's objection to questions about the report. In an offer of proof, defense counsel suggested the report contained the words: "There were four in the car, the window on the right came down, somebody in the auto started shooting."
The judge then entered a finding of probable cause. The State then sought a finding of urgent and immediate necessity to detain J.E. in custody.
J.E. was on supervision for possession of cannabis at the time of the hearing. He had three prior court referrals. He attended Clemente High School as a night student. He had no prior violent crimes in his background. He was a life-long Chicago resident. He lived with two brothers and a sister. His father was in court.
The judge found there was urgent and immediate necessity to hold J.E. in custody.
The State filed a motion to permit prosecution of a minor under the criminal laws. The purpose of the motion was to transfer J.E. from the juvenile court to the criminal court, where he would be treated as an adult under *1055 the Criminal Code. It was a presumptive transfer motion, brought under 705 ILCS 405/5-4(3.3) (West 1992). J.E.'s lawyer opposed the motion.
J.E.'s transfer hearing was held on March 31, 1995, before another judge. The parties stipulated to admission of the transcript from the detention hearing. No other evidence was offered. The State relied entirely on the detention hearing finding of probable cause to establish a rebuttable presumption that the minor was not a fit and proper subject to be dealt with under the Juvenile Court Act. If the rebuttable presumption were to arise, evidence concerning the charges would be closed. All that would remain is a section 5-4(3.3)(b) determination of whether the minor "would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court * * *" If, after evaluating seven statutory factors, the trial judge finds the minor would not be "amenable," the case is transferred to the criminal court where proceedings would be conducted under the Criminal Code.
The judge refused to hold that the detention hearing finding of probable cause was enough to establish the rebuttable presumption sought by the State. Further, the judge seemed to be holding that it is the State's obligation at a transfer hearing to establish probable cause as to each charge in the petition for adjudication and each charge in the motion to transfer the case to the criminal court. He denied the State's motion. This appeal followed.

OPINION
The section 5-10 detention hearing is to be held within 36 hours of the time the juvenile is taken into custody, excluding weekends and holidays. The court's duty is to determine whether there is "probable cause to believe that the minor is a delinquent minor * * *." If the court finds probable cause, it then goes on to determine whether there is an "immediate and urgent necessity" to detain the minor. Strict compliance with the 36-hour time limit is required. People v. Clayborn, 90 Ill.App.3d 1047, 46 Ill.Dec. 435, 414 N.E.2d 157 (1980).
In this case, as in most detention hearings, defense counsel filed his appearance moments before the hearing began. He first saw the police report as his cross-examination began. Obviously, time for investigation was limited, if it existed at all. There was no attempt to sort out the different charges in the petition. A general finding of delinquency was made. No mention was made of any specific charge. The State successfully cut off defense counsel's attempts to inquire into the reliability of Marquis Carter's hearsay statements to Officer Cordona.
The purpose of a section 5-10 detention hearing is to ensure that a minor is not held in custody for more than 36 hours without a judicial finding of probable cause to believe he or she is a delinquent minor. See In re S.I., 234 Ill.App.3d 707, 712, 175 Ill.Dec. 646, 600 N.E.2d 889 (1992). A "delinquent minor" is any minor who violates or attempts to violate any Federal or state law or municipal ordinance. 705 ILCS 405/5-3 (West 1992).
The detention hearing serves a limited purpose and is transitory in nature. It requires a judge to decide whether the minor should continue to be detained. If the judge finds there is no probable cause to believe the minor is delinquent, the minor is released from custody and the petition dismissed. If probable cause exists, but no reason to detain the minor is found, the minor is released from custody and the case set for adjudicatory hearing somewhere down the road. If probable cause and a reason to detain are found, the adjudicatory hearing is required within 15 days. Section 405/5-14.
A finding of no probable cause at the detention hearing is not final. The State is free to refile or reinstate its delinquency petition. See In re S.I., 234 Ill.App.3d at 714, 175 Ill.Dec. 646, 600 N.E.2d 889.
If the minor is detained, any interested party may file a motion to modify or vacate the temporary custody order on certain specified grounds. Section 405/5-10(8).
The detention hearing is a statutory creation. If we were to search for an analogy, it would rest in the criminal law somewhere between the hearing on probable cause to detain an arrested person (Gerstein v. Pugh, *1056 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and the preliminary hearing conducted under our Criminal Code. See In re S.I., 234 Ill.App.3d at 712, 175 Ill.Dec. 646, 600 N.E.2d 889.
Section 5-10 provides that no detention hearing may be held unless the minor is represented by counsel. Beyond that, the statute provides no guidance for the conduct of the hearing or its permissible scope, other than to say: "* * * all witnesses present shall be examined before the court in relation to any matter connected with the allegations made in the petition." Presumably, hearsay testimony may be relied on by the State, although the statute is silent on the subject. See In re S.I., 234 Ill.App.3d at 712, 175 Ill.Dec. 646, 600 N.E.2d 889; People v. Blackman, 91 Ill.App.3d 130, 133, 46 Ill.Dec. 524, 414 N.E.2d 246 (1980) (hearsay may be used to establish probable cause at a preliminary hearing).
In this case, all testimony at the detention hearing came from a police officer who entered the case three days after the shooting. The trial judge's rulings reflect an understanding of the limited scope and summary nature of the probable cause portion of the hearing.
The transfer hearing differs in nature, scope, and impact. If the State succeeds at a transfer hearing the juvenile court waives jurisdiction over the minor. He or she enters the adult criminal law system. No longer is the court primarily concerned with the duty "fully to gather information bearing upon the current condition and future welfare of persons subject to this Act." 705 ILCS 405/1-2(2) (West 1992). Now the minor faces the lasting and considerable impact of a criminal conviction, not to mention the prospect of a sentence substantially longer than he or she could receive in the juvenile system.
The United States Supreme Court has said:
"It is clear beyond dispute that the waiver of jurisdiction is a `critically important' action determining vitally important statutory rights of the juvenile." Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84, 94 (1966).
While the procedures and criteria governing a transfer hearing are controlled by statute, "The statute itself is rooted in the constitutional requirement of procedural due process[.]" People v. Clark, 119 Ill.2d 1, 8, 115 Ill.Dec. 613, 518 N.E.2d 138 (1987).
Because the transfer hearing is a critical stage in the juvenile proceeding, "* * * there is no place in our system of law for reaching a result of such tremendous consequences without ceremonywithout hearing, without effective assistance of counsel, without a statement of reasons." Kent v. United States, 383 U.S. at 554, 86 S.Ct. at 1053-54, 16 L.Ed.2d at 93. (Emphasis added.)
Delineating the judge's inquiry into probable cause at a transfer hearing, section 5-4(3.3)(a) uses a word not contained in the detention hearing statute (section 5-10) or the preliminary hearing statute in the Criminal Code (725 ILCS 5/109-3 (West 1992)). In order to find a rebuttable presumption of transfer, the judge must find "there is probable cause to believe that the allegations in the petition and motion are true * * *." (Emphasis added.) This is the place where the law envisions "effective" assistance of counsel.
The transfer hearing judge may use hearsay evidence in the mandated search for truth. People v. Cooks, 271 Ill.App.3d 25, 39, 207 Ill.Dec. 734, 648 N.E.2d 190 (1995). The State's burden is to present enough evidence to persuade the juvenile judge to grant the motion to transfer. In the Interest of L.J., 274 Ill.App.3d 977, 979, 211 Ill.Dec. 209, 654 N.E.2d 671 (1995). The State may immediately appeal the judge's refusal to transfer, but the minor who is transferred cannot appeal that decision until his criminal court case is completed by conviction. People v. Taylor, 76 Ill.2d 289, 307-08, 29 Ill.Dec. 103, 391 N.E.2d 366 (1979). The question on appeal is whether the transfer hearing court abused its discretion. People v. M.D., 101 Ill.2d 73, 83, 77 Ill.Dec. 744, 461 N.E.2d 367 (1984).
Section 5-4(3.3)(a) is a recent addition to the Juvenile Court Act, effective January *1057 1, 1995. It is designed as an alternative to the more cumbersome path to the criminal court established in section 5-4(3)(a). It names specific offenses that may lead to the creation of a rebuttable presumption of transfer. Once the rebuttable presumption of transfer arises, it cannot be defeated unless the judge finds the minor would be amenable to the care, treatment, and training programs of the juvenile court, based on an evaluation of seven factors.
Because the transfer hearing does not determine guilt or innocence, the procedural safeguards required at criminal trials and delinquency adjudications are not mandated. Taylor, 76 Ill.2d at 303, 29 Ill.Dec. 103, 391 N.E.2d 366. But, the hearing "must measure up to the essentials of due process and fair treatment." Kent, 383 U.S. at 562, 86 S.Ct. at 1057, 16 L.Ed.2d at 97-98.
Given the differences between the detention hearing and the transfer hearing differences of nature, scope, and purpose we conclude the transfer hearing judge was correct when he declined to accept the finding of probable cause made at the detention hearing. Although the detention and transfer hearings share some trappings, the difference in consequences for the juvenile requires their separation.
Nothing in the Juvenile Court Act even hints at a legislative intent to bind the transfer hearing judge to a finding of probable cause at the detention hearing. We cannot add to the statute. We have no "authority to engage in judicial legislation." In re M.M., 156 Ill.2d 53, 67, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993).
The judge's duty at the transfer hearing is to "hear and determine motions to transfer * * *" There is nothing to "determine" if the judge is bound to accept the results of a hearing that can best be described as cursory.
The statutory scheme clearly envisions a distinct and independent transfer hearing. Because the inquiry is into the truth of the allegations, defense counsel must be given an opportunity to be effective. That would mean allowing at least some inquiry into the credibility, motives, and opportunity to observe of key witnesses. By then, defense counsel will have investigated the case and become familiar with it. His cross-examination will have a "motive and focus" it did not have at the time of the detention hearing. See People v. Rice, 166 Ill.2d 35, 41, 209 Ill.Dec. 635, 651 N.E.2d 1083 (1995). The judge may consider the quality of any hearsay evidence that is presented.
The State contends that principles of collateral estoppel support the binding nature of the detention hearing finding of probable cause. The stark differences between the two kinds of hearings raise considerations of basic fairness that defeat the State's contention. Besides, collateral estoppel "is wholly irrelevant in the context of relitigating facts found in the earlier part of the same proceeding." Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co., 158 Ill.2d 218, 225, 198 Ill.Dec. 834, 633 N.E.2d 675 (1994).
It may be true, as the State contends, that it might have to present the same evidence twice if its position is not upheld. We believe any added burden on the State is negligible, especially when weighed against the preservation of a minor's vitally important constitutional and statutory rights. Our Supreme Court has said:
"The history of the present transfer provision makes it clear that a decision to transfer a juvenile from the jurisdiction of the juvenile court to the jurisdiction of the criminal court requires faithful adherence to the statutory requirements governing the transfer proceeding in light of the purpose of those requirements." Clark, 119 Ill.2d at 12, 115 Ill.Dec. 613, 518 N.E.2d 138.
We do not write on a clean slate in this case. The third division of this court very recently considered similar issues in three consolidated cases. In re R.L., No. 1-95-0991; In re O.U., No. 1-95-1308; In re R.D., 282 Ill.App.3d 839, 217 Ill.Dec. 885, 668 N.E.2d 70 (1996). In a thoughtful opinion the court held "the finding of probable cause at the detention hearing does not bind the trial court as to probable cause at the transfer hearing and the minor is entitled to a de *1058 novo hearing." We agree with that conclusion.
We also agree with the third division's analysis of the admissibility of the transcript of the detention hearing. Because of the differences in the nature, scope, and purpose of the hearings, the detention hearing transcript may not be admitted at the transfer hearing unless the State and the defense stipulate to its admission, or the State offers it without objection from the defense.
If the parties agree to admit the transcript, or if the defense does not object to its admission, the hearing judge may consider the testimony presented at the detention hearing. He also may consider additional evidence offered by either party when deciding whether the allegations in the petition and motion are true.
In this case, five charges were filed against J.E.aggravated battery causing great bodily harm, aggravated battery while discharging a firearm, aggravated discharge of a firearm, attempt murder, and armed violence.
Section 5-4(3.3)(a) provides that the attempt murder and aggravated discharge of a firearm counts can lead to a rebuttable presumption of transfer. The aggravated battery and armed violence counts cannot. The judge at the detention hearing did not say which counts he was relying on when he found J.E. to be a delinquent minor. It did not matter at that point. It matters at the transfer hearing.
Here, the transcript of the detention hearing was admitted by stipulation. That was the only evidence presented. The transfer hearing judge seemed to believe that the State was required to establish probable cause to believe all of its charges were true. We find nothing in the Juvenile Court Act in general or section 5-4(3.3)(a) specifically that requires the State to prove probable cause for all of its charges. Probable cause to believe any one of the charges listed in section 5-4 is true is enough to support a rebuttable presumption of transfer and move the hearing to the subsection (b) stage.

CONCLUSION
We believe the interests of justice would best be served by remanding this cause for a new transfer hearing. For that reason, we vacate the judge's denial of the State's motion to transfer and remand this cause for a new transfer hearing consistent with our findings in this case.
VACATED AND REMANDED.
BUCKLEY and BRADEN, JJ., concur.